# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM CONSIGLIO, JR.,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>EDMUND G. BROWN, et al.,<br><br>　　　Defendants. | Case No. 1:16-cv-01268-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, (ECF No. 31), AND PLAINTIFF'S MOTION TO ORDER DEFENDANT TO HALT DESTRUCTION AND DISCARDING OF PATIENT PROPERTY, (ECF No. 36)<br><br>**THIRTY-DAY DEADLINE** |

## I.

## INTRODUCTION

Plaintiff Sam Consiglio, Jr., is a civil detainee at Coalinga State Hospital ("CSH"), proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. In this case, Plaintiff asserts that a ban on certain electronic devices at CSH pursuant to 9 C.C.R. § 891 ("Section 891") (which prohibits non-LPS patients, such as sexually violent predators, from having any access to the internet) and 9 C.C.R. § 4350 ("Section 4350") (which prohibits all patients in the custody of state hospitals from possessing any electronic devices with wireless capabilities, including but not limited to cell phones, computers, PDAs, electronic gaming

1

devices, and graphing calculators with internet capabilities), amounts to punishment in violation of the Fourteenth Amendment.

Currently before the Court are (1) Plaintiff's motion for a temporary restraining order, filed on February 2, 2018, (ECF No. 31), and (2) motion to order defendant to halt the destruction and discarding of patient property, filed on February 22, 2018, (ECF No. 36).

Plaintiff's original motion challenges the seizure of property pursuant to amendments to Section 4350. (ECF No. 31.) Defendants filed an opposition to the motion, on extension, on February 21, 2018. (ECF No. 35.) As noted above, the next day, Plaintiff filed another motion challenging the plan to begin destroying and discarding patient property that had been seized pursuant to amendments to Section 4350. (ECF No. 36.) On March 1, 2018, Plaintiff filed a reply to Defendants' opposition. (ECF No. 40.) These motions are now deemed submitted. Local Rule 250(l).

## II.
## LEGAL STANDARDS

"A temporary restraining order is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." Whitman v. Hawaiian Tug and Barge Corp./Young Bros. Ltd. Salaried Pension Plan, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998). The factors considered for issuing a temporary restraining order are the same as the standards for issuing a preliminary injunction. Ohio Republican Party v. Brunner, 543 F.3d 357, 361 (6th Cir. 2008); Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). In Winter, the Supreme Court held that "[a] court may grant a preliminary injunction only if the plaintiff establishes four elements: (1) likelihood of success on the merits; (2) likelihood of suffering irreparable harm absent a preliminary injunction; (3) the balance of equities tips in plaintiff's favor; and (4) injunctive relief is in the public interest." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015); Leigh v. Salazar, 677 F.3d 892, 896 (2012). "To receive a preliminary

injunction, [a plaintiff is] required to show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." In re Focus Media Inc., 387 F.3d 1077, 1085 (9th Cir. 2004) (quoting Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir.1999)). "These standards 'are not separate tests but the outer reaches of a single continuum.' " Stuhlbarg Int'l Sales Co., 240 F.3d at 840 (quoting International Jensen, Inc. v. Metrosound U.S.A., 4 F.3d 819, 822 (9th Cir.1993)). An injunction may only be awarded upon a *clear showing* that the plaintiff is entitled to relief. Winter, 555 U.S. at 22 (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)) (emphasis added).

## III.

## DISCUSSION

Plaintiff seeks an order preventing officials at CSH from seizing hard drives and flash drives from patients pursuant to the amendments to Section 4350. Plaintiff contends that he will suffer irreparable harm and injury if his electronic devices and items are confiscated. Plaintiff also contends that he overheard from an employee that the property would be destroyed.

Defendants oppose Plaintiff's motion, arguing that the aim of the newly-amended regulation is to prevent the victimization and re-victimization of children portrayed in pornography and that Plaintiff cannot establish a reasonable likelihood of success in this case. Further, they argue that Plaintiff will not be harmed because he has access to a DSH computer lab to conduct legal, treatment and other appropriate activities. Further, Defendants contend that computers and electronic devices were confiscated as allowed by the regulation on or about January 29, 2018, and the process was completed by January 31, 2018.

In reply, Plaintiff admits that there have been several instances of patients being caught with child pornography at CSH, but states that it is not an "epidemic." Therefore, Plaintiff does not believe the amendments to Section 4350 were warranted under the facts and circumstances.

**A. Likelihood of Success on the Merits**

In deciding whether a preliminary injunction should issue, the likelihood of success on the merits is the most important factor for the court to consider. Disney Enterprises, Inc. v. VidAngel,

1  Inc., 869 F.3d 848, 856 (9th Cir. 2017).  To establish a substantial likelihood of success on the
2  merits, the plaintiff must show "a fair chance of success."  In re Focus Media Inc., 387 F.3d at
3  1086 (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir.1988)).
4  "[O]nce the moving party has carried its burden of showing a likelihood of success on the merits,
5  the burden shifts to the non-moving party to show a likelihood that its affirmative defense will
6  succeed."  In re Focus Media Inc., 387 F.3d at 1086 (quoting Perfect 10, Inc. v. Amazon.com, Inc.,
7  508 F.3d 1146, 1158 (9th Cir. 2007)).  When a plaintiff has failed to show likelihood of success on
8  the merits, the Court need not consider the remaining factors.  Garcia, 786 F.3d at 740.

9  In this case, Plaintiff contends that Section 4350 is punitive in nature.  Under Ninth Circuit
10 precedent, "a restriction is 'punitive' where it is intended to punish, or where it is 'excessive in
11 relation to [its non-punitive] purpose,' 'or is 'employed to achieve objectives that could be
12 accomplished in so many alternative and less harsh methods[.]"  Jones v. Blanas, 393 F.3d 918,
13 934 (9th Cir. 2004) (citations omitted).  "[A] presumption of punitive conditions arises where the
14 individual is detained under conditions identical to, similar to, or more restrictive than those under
15 which pretrial criminal detainees are held, or where the individual is detained under conditions
16 more restrictive than those he or she would face upon commitment."  Id.  This presumption can be
17 rebutted by the defendants explaining a legitimate, non-punitive purpose for the conditions
18 imposed.  Id.

19 Plaintiff is detained as a Sexually Violent Predator ("SVP") pursuant to the Sexually Violent
20 Predators Act ("SVPA").  An SVP is defined as "a person who has been convicted of a sexually
21 violent offense against one or more victims and who has a diagnosed mental disorder that makes
22 the person a danger to the health and safety of others in that it is likely that he or she will engage in
23 sexually violent criminal behavior."  Cal. Welf. & Inst. Code § 6600(a)(1).  The SVPA authorizes
24 the involuntary civil commitment of a person who has completed a prison term, but has been given
25 a "full evaluation" and found to be a SVP.  Reilly v. Superior Court, 57 Cal.4th 641, 646 (2013).
26 The purpose of the SVPA is "'to protect the public from dangerous felony offenders with mental
27 disorders and to provide mental health treatment for their disorders."  State Dep't of State Hosps.
28 v. Superior Court, 61 Cal.4th 339, 344 (2015) (quoting People v. McKee, 47 Cal.4th 1172, 1203

(2010)). "[SVPs] are involuntarily committed because their mental disease makes them dangerous to others." Seaton v. Mayberg, 610 F.3d 530, 540 (9th Cir. 2010).

Pursuant to the SVPA, an SVP who is committed to a secure facility for mental health treatment shall be placed at CSH absent unique circumstances. Cal. Welf. & Inst. Code, § 6600.05(a). "Placement at CSH is sufficiently analogous to an inmate's incarceration in prison, which 'by definition . . . [is a] place[ ] of involuntary confinement of persons who have a demonstrated proclivity for anti-social criminal, and often violent, conduct [.]" People v. Golden, 19 Cal. App. 5th 905, 912 (2017), review denied (Apr. 18, 2018) (quoting Hudson v. Palmer, 468 U.S. 517, 526 (1984)).

Although inmates retain certain rights that does not mean that their rights are not subject to restrictions and limitations. Bell v. Wolfish, 441 U.S. 520, 545 (1979). Lawful incarceration brings with it the withdrawal or limitation of many privileges and rights that are justified by considerations of the penal system. Id. at 546. "There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 566 (1974)). This principle applies equally to pretrial detainees and pretrial detainees do not possess the full range of freedoms as an unincarcerated individual. Wolfish, 441 U.S. at 546. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Id.

Defendants present evidence that detainees have used personal computers and other electronic devices to download, store, and distribute child pornography at CSH. (Decl. of Brandon Price ("Price Decl."), ECF No. 35-2, ¶ 4.) The Department of Police Services at CSH has been actively engaged in locating electronic devices that are being used for this illicit activity. (Id. at 5.) Despite arrests and prosecution by the Fresno County District Attorney's Office, detainees continue to use personal computers and electronic devices for this illicit activity. (Id. at ¶¶ 5-6.) Detainees have challenged the searches and seizures when child pornography is found on their computers. (Id. at ¶ 6.)

///

5

The DSH has determined that the amendment to section 4350 is necessary to protect the public, specifically victims of child pornography. (Price Decl. ¶ 8.) Child pornography is a unique crime since the victim is re-victimized each time the image of the victim is viewed. (Id.) The DSH is attempting to prevent this re-victimization through the adoption and implementation of the emergency regulation. (Id.) The amendment of section 4350 responds to the increased complexity of technological devices available to patients and their continued use of such devices for the criminal activity of downloading, storing, and distributing child pornography. (Id. at ¶ 9.)

One of the missions of CSH is to stop the cycle of child abuse by treating SVPs until they are sufficiently rehabilitated to return to the community. (Id. at ¶ 10.) The amendments of section 4350 serve this mission by preventing the victimization and re-victimization of children through the use of personal computers and other electronic devices for these illicit activities. (Id.) Detainees have used personal computers and other electronic devices to download, store, and distribute child pornography at CSH. (Id. at ¶ 4.) Permitting unsupervised digital storage, viewing, and transfer is feeding these illegal activities. (DSH Notice of Emergency Amendments ("Emergency Amendment Notice"), ECF No. 35-1, at 39.)

Although Plaintiff alleges that section 4350 is punitive in nature, Plaintiff is an SVP who has been found to be likely to engage in sexually violent criminal behavior. Plaintiff is detained for the purpose of receiving mental health treatment until he has been sufficiently rehabilitated to be able to return to the community. Further, Defendants have implemented section 4350 to protect the victims of child pornography from re-victimization which continues to be occurring at CSH despite the DSH's efforts to locate and prosecute those involved in such illegal activity. Plaintiff admits that child pornography is a problem at CSH, although he may dispute the characterization of the scope of the issue.

As CSH has a legitimate interest in preventing illegal activity, maintaining institutional security, and preserving internal order and discipline, Wolfish, 441 U.S. at 546, the Court finds that Plaintiff has not demonstrated that he is likely to prevail on the claim that Section 4350 is punitive in nature.

///

**B. Challenge to the regulation as overbroad**

Plaintiff also asserts that the regulations in this action are overbroad and that the intended purposes of the regulations can be obtained through less-restrictive means. However, Section 4350 itself provides that commercially produced CDs and DVDs and players without internet access will be permitted and patients will have access to digital media on a supervised basis. (Emergency Amendment Notice at 42-43; Price Decl. ¶ 19.) Patients can purchase and possess a music player, if the device does not have internal storage capabilities, recording capabilities, or internet access. (Price Decl. at ¶ 20.)

As technology advances it has become easier for patients to engage in criminal activity and harder for criminal activity to be detected. (Price Decl. ¶ 4.) Memory devices as small as 1 GB have the capacity to store downloadable software that allows copying of materials through other electronic devices. (Emergency Amendment Notice at 35.) While gaming devices that are internet disabled were previously permitted, many recent gaming devices contain accessible data storage capabilities allowing patients to download illegal material and software. (Id. at 36) These devices also allow non-proprietary CDs and DVDs for transfer and distribution of images or receipt and download of images. (Id.) The ability to burn DVDs and CDs permits the ability to distribute illegal images and communications. (Id.) Patients will be permitted to own CDs and DVDs provided by the manufacturer. (Id.)

Plaintiff has not demonstrated that he is likely to prevail on his claim that Section 4350 is overbroad by prohibiting items that have memory storage capability or are able to access the internet as these are the types of devices that would enable a patient to access and distribute child pornography which the regulation is enacted to prevent. Although Plaintiff has failed to show likelihood of success on the merOits, the Court shall address the remaining factors.

**C. Likelihood that Plaintiff Will Suffer Irreparable Harm**

The Court also finds that Plaintiff has not demonstrated that he will suffer irreparable harm absent the issuance of injunctive relief. To receive injunctive relief, Plaintiff must also show that irreparable injury is likely in the absence of an injunction. Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013).

Plaintiff argues that due to the confiscation of hard drives and flash drives, he will no longer have access to his legal documents that are stored electronically. As noted above, Defendants have presented evidence that if a patient consents to the search of his digital material, his items may be mailed to a location of his designation or stored at the hospital as long as no illegal materials are found. (Price Decl. ¶¶ 15, 16.) Plaintiff's legal, treatment and other materials can be transferred onto a state-owned device that will be accessible to Plaintiff under supervision in the computer lab. (Id. ¶ 16.) There are approximately 25 state owned computers in the computer lab that are available for patient use. (Id. ¶ 19.) These computers are on a stand-alone network with no internet connectivity. (Id.)

Plaintiff contends that he was presented with a waiver regarding searches, but declined to consent. His refusal, however, does not show that there is a risk of irreparable harm here. For these reasons, Plaintiff has not shown that he will suffer irreparable harm by the implementation of the amendments to Section 4350.

### D. Factors Weigh in Favor of Denying Injunctive Relief

Plaintiff does not address balancing the equities or the public interest in granting injunctive relief. Defendants argue that the harm from confiscation of Plaintiff's electronic devices is alleviated because DSH has provided Plaintiff with a manner to retain and access his legal documents, a computer lab for his legal work and treatment, and access to recreational devices. Defendants also argue that confiscation of computers and electronic devices of the civil detainees serves a significant public interest of preventing SVPs from having contact with victims or finding new victims and downloading and disseminating child pornography and other illicit materials.

In balancing the equities, "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." N. Cheyenne Tribe v. Norton, 503 F.3d 836, 843–44 (9th Cir. 2007). Here, Plaintiff has not demonstrated that he will suffer any significant injury due to the implementation of Section 4350. Defendants have provided Plaintiff with an opportunity to maintain copies of his legal and treatment documents, a computer lab, and Plaintiff can access devices for purposes of entertainment. If an injunction were to be granted, Defendants would be impeded in their mission

of stopping the cycle of child abuse and preventing the victimization and re-victimization of children through the illicit activities by use of personal computers and other electronic devices. Further, the continued presence of child pornography at CSH impedes Defendants' purpose of rehabilitation of SVPs.

Finally, there is a strong public interest in protecting victims from re-victimization by the dissemination of child pornography. As Defendants argue, the harm to children and members of the public by allowing ongoing access to child pornography cannot be alleviated or remedied. The significant public interest in preventing the victimization and re-victimization of children through the dissemination of child pornography weighs against granting the relief requested.

## IV.

## CONCLUSION AND RECOMMENDATION

For the reasons discussed, the Court finds that Plaintiff has not demonstrated that he is likely to succeed on the merits of his claims or that he will suffer irreparable injury due to the implementation of the amendments to section 4350.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for a temporary restraining order, filed on February 2, 2018 (ECF No. 31) be denied; and

2. Plaintiff's motion for a court order to halt the destruction and discarding of patient property, filed on February 22, 2018 (ECF No. 36), be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

///

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 24, 2018**

UNITED STATES MAGISTRATE JUDGE